### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RETA MCRAE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-04-878-M** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying her application for supplemental security income benefits. Pursuant to an order entered by United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. __). Both parties have briefed their respective positions, and the matter is at issue. For the reasons set forth herein, it is recommended that the Commissioner's decision be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income benefits on April 16, 2002, alleging a disability onset date of the same day. Tr. 52-54, 71. The application was denied on initial consideration and on reconsideration at the administrative level. Tr. 24, 25, 26-27, 30-31. Pursuant to Plaintiff's request, a hearing de novo was held before an administrative law judge on October 20, 2003. Tr. 32-33,

176-192. Plaintiff appeared in person and with counsel and offered testimony in support

of her application. Tr. 178-189. A vocational expert testified at the request of the

administrative law judge. Tr. 190-192. The administrative law judge issued his decision

on January 8, 2004, finding that Plaintiff was not disabled within the meaning of the

Social Security Act and thus not entitled to supplemental security income benefits. Tr.

10-12, 13-20. The Appeals Council denied Plaintiff's request for review on May 17, 2004,

and thus the decision of the administrative law judge became the final decision of the

Commissioner. Tr. 4-6.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of

review as follows:

> We review the agency's decision to determine whether the factual findings
> are supported by substantial evidence in the record and whether the correct
> legal standards were applied. Substantial evidence is such relevant
> evidence as a reasonable mind might accept as adequate to support a
> conclusion. However, a decision is not based on substantial evidence if it
> is overwhelmed by other evidence in the record or if there is a mere
> scintilla of evidence supporting it. The agency's failure to apply correct
> legal standards, or show us it has done so, is also grounds for reversal.
> Finally, because our review is based on the record taken as a whole, we will
> meticulously examine the record in order to determine if the evidence
> supporting the agency's decision is substantial, taking into account
> whatever in the record fairly detracts from its weight. However, we may
> neither reweigh the evidence nor substitute our discretion for that of the
> Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and

citations omitted). The Commissioner follows a five-step sequential evaluation process

to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52

(10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of

2

disability at steps one through four. Id. at 751 & n. 2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given her age, education, and work experience. Id. at 751.

## III.  THE ADMINISTRATIVE LAW JUDGE'S ANALYSIS

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 416.920.  Tr. 14.  He first found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  Tr. 14, 19.  At steps two and three, the administrative law judge found that Plaintiff had malignant neoplasm of the bone and articular cartilage osteochondroma- left femur, and that she suffered from back pain, cancer surgery, left leg pain and asthma, and that her impairments were severe but not severe enough to meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. Tr. 14,16, 19.  At the fourth step of the sequential evaluation process, the administrative law judge found that Plaintiff could not perform her past work as a teacher, teacher's aide or retail sales clerk. Tr. 17, 19.  Based upon the testimony from the vocational expert, the administrative law judge found at step five that a person of Plaintiff's age with her educational background, work experience, and residual functional capacity could perform work as a clerk and a cashier.  Tr. 18-20.  The administrative law judge also concluded that because Plaintiff did not have any non-exertional limits on her ability to engage in sedentary work, that the Medical Vocational Guidelines, as set forth in Appendix 2, Subpart P, Social Security Regulations, No. 4 (grids) dictate that she is not

3

disabled.  Tr. 18-19.  Thus, the administrative law judge found that Plaintiff was not

disabled and was not entitled to supplemental security income benefits.  Tr. 18-20.

## IV.    ISSUES ON APPEAL

The Plaintiff raises two issues on appeal.   First, she contends that the

administrative law judge should have found that she was entitled to benefits for a closed

period, regardless of whether she was entitled to continuing benefits.  Brief of Plaintiff,

p. 5-7.  Second, she claims that the administrative law judge failed to perform a proper

credibility determination resulting in an incorrect assessment of her residual functional

capacity.  Brief of Plaintiff, p. 7-10.

## V.    MEDICAL RECORDS

On August 30, 2001, Plaintiff was admitted to Mercy Health Center for the

resection of an osteochondroma on her left proximal femur.  Tr. 85, 86, 89, 92-93.  The

benign tumor had grown to a significant size and was causing Plaintiff pain and

interfering with her ability to function.  Tr. 85, 86, 91, 92.  Post-operatively, Plaintiff was

ambulating with a walker, as tolerated on her lower left extremity.  Tr. 86.  Plaintiff was

discharged on August 31, 2001.  Tr. 85, 86, 96.  Plaintiff returned to Kimberly Smith,

M.D., on September 11, 2001, for her first post-operative visit.  Tr. 103.  Dr. Smith noted

that she was ambulating quite well without a walker or crutches.  Id.  Plaintiff reported

to Dr. Smith that she was not experiencing pain in her leg, although she was numb in a

small portion of the posterior aspect of her leg, consistent with her procedure.  Id.

Plaintiff next saw Dr. Smith on October 19, 2001, complaining of her leg giving out

occasionally, although she did not complain of pain. Tr. 102.  Dr. Smith noted that there

was always a question whether Plaintiff suffered from back problems as well as hip problems. Tr. 102. Dr. Smith recommended that Plaintiff be seen in physical therapy for evaluation of her back. Id. Plaintiff returned to Dr. Smith on December 4, 2001 with continued complaints of her left leg giving out without warning. Tr. 101. Dr. Smith noted that this was more than likely the result of a back problem rather than a hip issue. Id. Dr. Smith noted that because of location, Plaintiff had not attended any physical therapy sessions. Id. With regard to her hip, Dr. Smith opined that Plaintiff could return to working status. Tr. 101. With regard to her back, Dr. Smith noted that "[i]f she will require protracted physical therapy she may require an assessment by a spine surgeon as to her ability to return to the workforce." Id.

On December 19, 2001, Plaintiff was evaluated at the Oklahoma Center for Athletes by a physical therapist. Tr. 134-136. Plaintiff complained of pain in her left leg and falling. Tr. 134. She reported that she felt better when at rest and worse when standing or walking. Id. She reported no medications. Id. She reported that all of her activities of daily living related to mobility were hindered, including bending, lifting, squatting, and long distance ambulation. Id. Her desired outcome was no pain. Id. The assessor noted that Plaintiff had some difficulty transitioning from sitting to standing and standing to sitting. Tr. 135. A decreased stride length was noted in Plaintiff's left leg, and she had minimal to moderate instability. Id. Plaintiff attended physical therapy on December 21, 2001 and reported that she was very sore after her first session. Tr. 145. She tolerated the physical therapy well. Id. On December 27, 2001, Plaintiff reported

that her legs were sore, but again she tolerated physical therapy well.  Id.  She reported three near falls since Christmas.  Id.

Plaintiff attended physical therapy on January 16, 2002, reporting a semi-fall onto her left knee and numbness in her left leg.  Tr. 145.  She tolerated physical therapy well. Id.  Plaintiff attended physical therapy on January 23, 2002 and reported that she had not fallen that week.  Tr. 144.  She tolerated the physical therapy well.  Id.  On January 29, 2002, Plaintiff again reported no falls and no new complaints to her physical therapist. Id.

On February 5, 2002, Plaintiff reported a tough week to her physical therapist due to foot cramps.  Tr. 144.  She tolerated physical therapy well.  Id.  On February 26, 2002, Plaintiff saw Dr. Smith again, who noted that her hip continued to show stable resolution of the resection of her osteochondroma.  Tr. 97.  Dr. Smith noted that Plaintiff had gone to physical therapy and demonstrated significant improvement in her overall spinal complaints.  Id.  Plaintiff walked without an assistive device and had excellent range of motion in her hip.  Id.  Dr. Smith encouraged Plaintiff to continue with physical therapy and to pursue vocational rehabilitation to permit her to return to some type of seated vocation, "as she will never be able to return to a manual labor position secondary to her chronic spine pain in addition to her previous tumor resection of her left femur."  Id. On that same date Dr. Smith completed a "Physician's Statement of Ability" on Plaintiff for the Department of Human Services.  Tr. 127-28.  Dr. Smith opined without any comment that Plaintiff would be unable to participate in any of the listed programs,

which included an orientation workshop, job search, a program called "The Choice is Yours," vocational education and a work experience program.  Tr. 127-28.

Plaintiff returned to physical therapy on March 14, 2002, and the physical therapist noted that she had decreased in strength over the past month. Tr. 144.  Plaintiff reported a fall on March 8, 2002.  <u>Id.</u>  Although Plaintiff complained of her leg giving way on March 20, 2002, her pain was minimal.  Tr. 126.  On March 22, 2002, Plaintiff completed physical therapy and it was noted that she was beginning to increase her repetitions. Tr. 143.  On March 28, 2002, Plaintiff complained of a lack of feeling in her left thigh at times.  Her tolerance of the physical therapy was fair.  <u>Id.</u>

On April 9, 2002, Plaintiff reported that she had been ill and unable to do her exercises at home.  Tr. 122, 143.  Her therapist opined that she had good potential to increase her strength and mobility. Tr. 122.  On April 11, 2002, Plaintiff reported no new complaints at physical therapy.  Tr. 142.  She tolerated the treatment well.  <u>Id.</u>  On April 17, 2002, Plaintiff reported that her back was sore because she had mopped her floors. <u>Id.</u>  She reported no changes on April 19, 2002 and tolerated her physical therapy well. <u>Id.</u>  On April 23, 2002, Plaintiff reported no changes and no new complaints.  <u>Id.</u>  On April 25, 2002, Plaintiff's therapy was rushed, but no new complaints were noted.  Tr. 141.

On April 30, 2002, Plaintiff complained of her leg giving way, causing her to fall at Wal-Mart.  Tr. 119, 141.  The therapist noted that Plaintiff had increased her walking capacity and endurance.  Tr. 119.  He opined that she had good potential to meet her goals.  <u>Id.</u>

On May 7, 2002, Plaintiff attended physical therapy with no new complaints.  Tr. 141.  On May 10, 2002, Plaintiff reported that her leg continued to give way if fatigued and that she had some stiffness.  Tr. 116, 141.  The therapist noted that she continued to improve her strength and endurance and that she had good rehabilitation potential.  Id.  On May 14, 2002, Plaintiff reported a fall on the prior day.  Tr. 140.  She tolerated her physical therapy well without increased pain.  Id.  On May 23, 2002, the physical therapist noted that Plaintiff had missed some sessions due to scheduling conflicts, but that she had continued her home exercise program.  Id.  The physical therapist noted that he would consider discharging Plaintiff to her home exercise program.  Id.  On May 29, 2002, Plaintiff's primary complaint to her therapist was that her leg continued to give out, causing her to fall.  Tr. 114, 140.  She had stitches in her right hand as a result of the fall.  Tr. 140.  The progress notes indicate that Plaintiff had increased her walking endurance.  Tr. 114.  On May 31, 2002, Plaintiff reported that she felt better and she tolerated her physical therapy well.  Tr. 140.

On June 4, 2002, Plaintiff presented to physical therapy with no new complaints.  Tr. 139.  On June 5, 2002, Bryan Finch, P.T., Plaintiff's therapist, opined that because of the pain in her left thigh and the accompanying instability, that Plaintiff would be at risk of falling while performing the work-related activities of standing, walking, lifting, carrying objects or handling objects.  Tr. 113.  He noted that her physical status should permit her to sit, hear, and speak, and that she could use her mental abilities and interact socially.  Tr. 113.

At her June 6, 2002, physical therapy session, the therapist noted that Plaintiff reported a pain level of six, and that she had fallen on May 19, 2002. Tr. 112. The therapist noted that Plaintiff was showing slow progress toward her goals and that she had fair potential. Id. On June 11, 2002, Plaintiff presented to physical therapy with no new complaints. Tr. 139. The therapist noted that she tolerated the physical therapy well and that she should increase her activity as tolerated. Tr. 139. On June 13, 2002, Plaintiff reported no new complaints except a left heel ache. Id. On June 20, 2002, Plaintiff reported no new complaints and tolerated the physical therapy well. Tr. 138.

On June 24, 2002, Plaintiff was discharged from physical therapy, having attended thirty sessions and missed between seven and ten sessions. Tr. 109, 110, 138. The physical therapist noted that Plaintiff reported pain in her left thigh and buttock of a six on a scale of one to ten. Tr. 109. The physical therapist noted that Plaintiff's tolerance of the treatment was fair. Id. Plaintiff reported feeling more confident with her left leg. Id. Although she had partially met some goals, she had plateaued at the time of her discharge and reached her rehabilitation potential. Id.

On June 27, 2002, John B. Hill, D.O., conducted a consultative examination of Plaintiff. Tr. 146-152. He noted her chief complaint of left leg pain and her history of osteochondroma of the left proximal femur. Tr. 146. He noted that she complained of pain in her lower back, down her left leg and sometimes into the foot. Id. He noted that Plaintiff reported that she had fallen in the past and hurt her hands, and that her problems were worsened by walking or bending and cleaning , and aggravated by sitting for more than five minutes or standing in one place for more than five minutes. Id.

Plaintiff reported that she takes Darvocet and ibuprofen, but that these cause her stomach to be upset.  Id.  Plaintiff reported some relief in laying down.  Id.  Dr. Hill noted that Plaintiff was ambulatory in the clinic in a very slow, antalgic shuffling gait favoring her left leg.  Tr. 147.  Plaintiff made her way onto the exam table with some difficulty.  Id. Her toe walking and heel walking were very weak and unstable, and Dr. Hill opined that her ability to ambulate was unsafe and unstable.  Id.  Although Plaintiff did not use an assistive device, she held onto walls and furniture.  Id.  Dr. Hill noted that Plaintiff had a decreased sensation to pinprick in her left leg and a decrease in vibratory sense and position sense.  Tr. 147.  Dr. Hill rated Plaintiff's strength in her left leg as a three out of five.  Id.  Dr. Hill's assessment was status post osteochondroma with a continued loss of proprioception and pain in the left leg.  Tr. 148.

Plaintiff was seen intermittently for non-orthopedic issues at the Mary Mahoney Memorial Health Center.  Tr. 167-171.  On April 1, 2002, Plaintiff was seen for a well woman examination, which was deferred.  Tr. 170.  She reported no complaints and the doctor noted that she was in no apparent distress.  Id.

As a result of her previous usage of dietary medicine and the affiliated litigation of claims, Plaintiff had an echocardiogram on September 15, 2002.  Tr. 164.  The test apparently showed moderate mitral regurgitation, an enlarged left atrium and a small ejection fraction.  Id.  Exactly when Plaintiff took the diet drugs is not established by the administrative record.

At the October 20, 2003 hearing Plaintiff testified that she had worked during 1984 and 1985 as a preschool teacher at the YMCA, from 1987 until 1992 in the Millwood

10

Public Schools as a teacher's aide and a teacher, and during 1996 as a retail clerk at Wal-Mart. Tr. 179-181. Plaintiff testified that in 1994 the tumor on her left proximal femur was diagnosed, but she was told that nothing could be done in Oklahoma to remove it. Tr. 181-82. After the birth of her son in June 2000, the pain became unbearable and she returned to the doctor. Id. The tumor was removed in August 2001, but nevertheless Plaintiff alleges that she continues to have a loss of sensation in her left leg, starting at her lower back. Tr. 183. Her left leg falls asleep and she falls as a result. Tr. 184. She experiences back pain that makes it difficult to sleep. Id. Plaintiff testified that she had not driven in three years out of concern for the safety of others due to her leg falling asleep. Id. Plaintiff testified that she stopped physical therapy in June 2002 because her insurance ran out and she could not afford to continue physical therapy. Tr. 185. However, she continues doing the exercises at home. Id. She testified that she does not take prescription pain pills because she could not function while taking them. Tr. 185, 186. She uses only over-the-counter pain medications. Tr. 185.

Plaintiff testified that it takes her an hour to prepare a meal because she must stop and take breaks due to the pain. Id. She testified that it takes her two weeks to clean her house because she can only do a little bit of work at a time. Tr. 186. She testified that she spends five to six hours a day lying in her recliner. Tr. 186-87. On average, she has six to seven good days a month, where she feels she can function. Tr. 187. Plaintiff testified that she does her shopping in two days, buying toiletries on one day and returning for groceries on another day. Tr. 188. She cannot walk for long without being in pain. Id. She has problems sitting for more than fifteen to twenty minutes, depending

11

on the type of chair.  Tr. 188-89.  Plaintiff testified that she could lift a five pound bag of potatoes or a twelve pack of soda.  Tr. 189.

## VI.      DISCUSSION

For the reasons set forth below, the undersigned concludes that the administrative law judge's credibility analysis was supported by substantial evidence and the administrative law judge did not err in failing to find that Plaintiff was entitled to benefits for any period of months as a result of an alleged disability.  Because the issues are better addressed by considering the administrative law judge's credibility analysis first, the undersigned will address the issues in the reverse order from Plaintiff's presentation in her briefs.

### A.  Credibility Determination

After concluding that Plaintiff suffered from the severe impairments of back pain, cancer surgery, left leg pain and asthma, the administrative law judge concluded at step three of the sequential evaluation that Plaintiff's impairments did not meet any listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr 16.  Accordingly, the administrative law judge proceeded to step four of his analysis, which includes an assessment of a claimant's residual functional capacity.

A claimant's residual functional capacity is defined as the maximum sustained work capability that  a claimant is still functionally capable of doing on a regular basis, despite her impairments.  20 C.F.R.  § 416.945(a)(1).  As is generally done, in assessing

Plaintiff's residual functional capacity the administrative law judge considered her credibility with regard to her limitations.  The administrative law judge opined:

> The Administrative Law Judge concludes that the claimant's statements concerning her impairments and their impact on her ability to work are not supported to the extent alleged by objective medical findings.  Although the claimant has some pain and discomfort she has not been completely compliant with physical therapy.  She only takes over-the-counter medications.  She has not tried to reduce her weight.  She is capable of taking care of her own needs as well as caring for 2 children.

Tr. 17.[1]

The standard for reviewing allegations of disabling pain is well established.  In accordance with <u>Luna v. Bowen</u>, 834 F.2d 161, 163 (10th Cir. 1987), the administrative law judge must consider (1) whether Plaintiff has established a pain-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between the impairment and Plaintiff's subjective allegations of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, Plaintiff's pain is in fact disabling.  The administrative law judge concluded "that objective medical records and hearing testimony support that the claimant has underlying medically determinable impairments that could reasonably cause some of the symptoms alleged."  Tr. 16.  Accordingly, the administrative law judge considered Plaintiff's subjective allegations.  <u>Id.</u>

Pursuant to Social Security Ruling 96-7p, "[w]hen the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to

---

[1] The administrative law judge also opined elsewhere in his findings that "[t]he claimant has not been fully compliant with physical therapy.  The claimant takes no prescription pain medication but does take some over-the-counter medications.  She can do chores at a paced rate.  She prepares breakfast for her children and herself.  She reported that she can lift up to 10 pounds."  Tr. 16.

produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, at *1. In light of his finding with regard to the objective medical evidence, the administrative law judge was required to consider all the relevant objective and subjective evidence and "decide whether he believe[d] the claimant's assertions of severe pain." Luna, 834 F.2d at 163. Some of the factors that may be considered in assessing a claimant's credibility as to her disabling pain include (1) her daily activities; (2) the location, duration, frequency, and intensity of her pain; (3) factors that precipitate and aggravate the pain; (4) the type, dosage, effectiveness, and side effects of any medication she receives or has received for relief of pain; (5) treatment, other than medication, the claimant has received for relief of pain; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms. Social Security Ruling 96-7p, 1996 WL 374186, * 3; 20 C.F.R. §416.929(c)(3); Luna, 834 F.2d at 164-66.

At the outset of his analysis the administrative law judge noted that he had considered all of the evidence in the record. Tr. 13. In assessing a claimant's credibility, an administrative law judge must state the evidence upon which he relies. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). He is not, however, required to undertake a factor by factor analysis and discuss every piece of evidence in the record. Id. Furthermore, "[c]redibility determinations are peculiarly the province of the finder of fact," and should not be upset "when supported by substantial evidence." Kepler v.

14

<u>Chater</u>, 68 F.3d 387, 391 (10th Cir.1995) (internal quotation marks omitted).  In this case, the administrative law judge's credibility determination is supported by substantial evidence and thus should be affirmed.

First and foremost, there is no medical evidence that Plaintiff suffered from disabling pain after the excision of her osteochondroma. On September 11, 2001, Plaintiff reported to Dr. Smith that she was no longer taking pain medication because her leg felt much better, and she was ambulating "quite well."  Tr. 103.

On October 19, 2001, Plaintiff had no complaints of pain when seen by Dr. Smith. Tr. 102.  Additionally, on December 4, 2001, Plaintiff returned to Dr. Smith and did not complain of pain, but only of her leg giving out.  Tr. 101.  Dr. Smith opined that from the standpoint of her hip, Plaintiff was able to return to working status.  <u>Id.</u>  On February 26, 2002, Plaintiff reported that she had been to physical therapy and she demonstrated significant improvement in her overall spinal complaints.  Tr. 97.  This improvement came despite the fact that Plaintiff's had only recently begun physical therapy. Furthermore, at physical therapy Plaintiff rarely complained of pain.  Tr. 138-145.  When Plaintiff did complain of back pain she offered the explanation that she had mopped all of her floors.  Tr. 142.  Plaintiff's complaints about pain generally seemed to be related to the exertion of a prior physical therapy session, not pain related to any otherwise undiagnosed back problem or continued problems with her left hip.[2]

---

[2] Plaintiff apparently did not seek any additional treatment for her left hip from Dr. Smith after February 26, 2002, two months after Dr. Smith noted that her hip did not impede her ability to work.  Tr. 101. According to the medical records submitted in support of her claim, Plaintiff never sought additional medical treatment for her back.

Plaintiff contends that the administrative law judge overlooked Dr. Smith's February 26, 2002 opinion that she could not participate in any of the vocational and training programs offered by the Department of Human Services because of her inability to sit or stand for prolonged periods of time. Tr. 127-28. Dr. Smith, however, did not provide any basis for her conclusion that Plaintiff could not participate in the programs, providing the administrative law judge with no practical factual basis for relying on the form. Id. Additionally, by June 5, 2002, Plaintiff's physical therapist opined that Plaintiff could engage in the work-related function of sitting without noting any limitations on that function.[3] Tr. 113. Sitting is a key requirement for sedentary jobs.

The administrative law judge also relied on the fact that Plaintiff did not take prescription pain medication in determining that her pain was not disabling. Plaintiff complains that the administrative law judge failed to consider the side effects of prescription pain medication that she reported during the application process. Tr. 67, 83. Although Plaintiff reported that she did not take prescription medications, allegedly because of side effects, the medical records reveal no evidence that any prescriptions were written for her during the pertinent time frame, with one exception. Immediately after her hip surgery Plaintiff was treated with Lortab.[4] Tr. 85, 86. However, at her

---

[3] Plaintiff contends that her inability to ambulate without holding onto the walls at the consultative examination supports the finding that her pain is disabling. Although Plaintiff apparently utilized the walls and furniture to ambulate at her consultative exam, she did not do so during therapy or during her visits to Dr. Smith, who made no notation of substantial deficiencies in Plaintiff's ability to ambulate. Additionally, even if Plaintiff required the assistance of a cane for effective ambulation such assistance would not necessarily preclude her from engaging in sedentary work. See Hull v. Chater, No. 96-7004, 1996 WL 528317, * 1 (10th Cir. Sept. 17, 1996) (This unpublished decision cited as persuasive authority pursuant to Tenth Circuit Rule 36.3).

[4] Plaintiff never reported any negative side effects of Lortab to Dr. Smith.

consultation prior to her hip surgery, despite her allegations of intense pain, Plaintiff reported that she was not taking any pain medications. Tr. 105, 107. When Plaintiff saw Dr. Smith for her first postoperative visit on September 11, 2001, she reported that she was not taking any pain medication. Tr. 103. When Plaintiff registered for physical therapy services on December 19, 2001, she reported that she was not taking any medications. Tr. 99. Accordingly, the administrative law judge's conclusion that Plaintiff was not taking pain medication because she did not have severe pain was supported by substantial evidence.[5]

Plaintiff also asserts that the administrative law judge erred in failing to consider that her ability to participate in physical therapy was curtailed by the termination of her insurance coverage. When Plaintiff started physical therapy, her physical therapist noted that she would be discharged to a home exercise program when she had met her long term goals or her progress had ceased. Tr. 136. Although Plaintiff alleges that she ceased physical therapy when her insurance ran out, her discharge from physical therapy does not reference a financial inability to participate. Rather, the physical therapist noted that Plaintiff had plateaued. Tr. 109. In fact, her discharge from therapy was anticipated by the progress notes on June 6, 2002. Tr. 112. Therein the physical therapist noted that the plan was to extend Plaintiff's home exercise program for discharge after two to four more weeks of physical therapy. Tr. 114. At the time of Plaintiff's discharge the physical

---

[5] Additionally, although Plaintiff reported to Mary Mahoney Memorial Health Center on July 1, 2002, that she was taking Darvocet as needed, there are no medical records for any physician prescribing her Darvocet, and she made no complaints about the effects of the drug. Tr. 169. At her consultative examination Plaintiff reported that she was taking Darvocet and ibuprofen but that it upset her stomach. Tr. 146. Again, however, there are no treatment records indicating a prescription for Darvocet or any complaints about the effects of prescription pain medication to any treating physician.

therapist noted that she had partially met some of her goals and plateaued, not that she had run out of insurance or lost the financial ability to proceed.  Tr. 109.

Plaintiff argues that administrative law judge erred in concluding that she was not compliant with her physical therapy regimen.  Tr. 16.  However, the records from Plaintiff's physical therapy indicate that she missed between seven and ten sessions, which represents up to one-fourth of her scheduled sessions.[6]  Tr. 109, 110.  Accordingly, the administrative law judge's decision in this regard is supported by substantial evidence.

The administrative law judge also relied on Plaintiff's ability to care for herself and her two children in determining that she did not suffer from disabling pain.  Plaintiff testified that she cares for her two children, then ages three and nine.  Tr. 185.  She is able to play with her children for short periods, to cook for them, although with breaks, and to maintain her household with paced chores.  Tr. 185-86.  Plaintiff argues that her activities do not establish that she can engage in substantial because she must lie down for ninety percent of the day.

"The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'"  Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987)).  However, taking care of two children is more than the sporadic performance of household tasks.  Additionally, the activities Plaintiff lists in her role as sole caretaker

---

[6] The record contains an inconsistency regarding how many sessions Plaintiff missed.  On June 18, 2002, it is noted that Plaintiff had missed ten sessions.  Tr. 110.  When Plaintiff was discharged from physical therapy on June 24, the notes indicate that she had missed seven sessions.  Tr. 109.

of two children are inconsistent with her alleged need to lie down for ninety percent of the day.  The administrative law judge was correct to consider Plaintiff's daily activities in assessing Plaintiff's credibility.

The administrative law judge's credibility analysis is supported by substantial evidence and accordingly does not provide a basis for remand of this matter.  Having determined that the administrative law judge's credibility analysis was supported by substantial evidence, the undersigned turns to the remaining issue, whether the administrative law judge should have found Plaintiff entitled to a period of benefits.

The Commissioner argues that a closed period of disability is only available for a claimant who has applied for disability insurance benefits under Title II of the Social Security Act.  Commissioner's Brief, p. 3.  The Commissioner notes, however, that if Plaintiff could establish that she was disabled from June 2001 until June 2002, she would be entitled to supplemental security income benefits for May and June 2002.  Id.

In February 2002, Dr. Smith opined without explanation that Plaintiff could not participate in any of the job seeking or vocational training programs offered by the Department of Human Services.  Tr. 127-28. Her opinion is not supported by any evidence of any kind as to why.  Id.  Prior to that time, on December 4, 2001 Dr. Smith concluded that Plaintiff could return to work from the standpoint of her hip.  Tr. 101. Accordingly, Dr. Smith's bare opinion in February 2002 that Plaintiff could not participate in any of the specified programs does not mandate a finding that as of that date Plaintiff was still disabled.

The only treatment Plaintiff sought for her back and leg between February 2002 and June 2002 was physical therapy.  Plaintiff did not seek pain relief or make additional complaints to the staff at the Mary Mahoney Health Center during this time.  Accordingly, the undersigned concludes that at most Plaintiff established that she was disabled for the period of time from June 2001 until February 26, 2002, which would not qualify Plaintiff for supplemental security income benefits, as the period is less than twelve months.  Accordingly, the administrative law judge did not err in failing to consider whether Plaintiff was eligible for any benefits, despite the absence of a continuing disability.

## **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the decision of the Commissioner should be affirmed.  The parties are advised of their right to file objections to this Report and Recommendation with the Clerk of this Court by May 10, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 20th day of April, 2005.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE